PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: JACQUELINE DUNCAN,
                                    *Debtor.*

JAMES DUNCAN, Administrator of the
Estate of Meigan Lin Duncan, a/k/a
Yang Chun Song,                              No. 05-1159
                    *Plaintiff-Appellant,*

                v.

JACQUELINE DUNCAN,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-04-443-1; BK-03-12031; AP-03-01240)

Argued: February 2, 2006

Decided: May 24, 2006

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

Reversed in part and remanded by published opinion. Judge Duncan
wrote the opinion, in which Judge Motz and Judge Traxler joined.

## COUNSEL

Richard George Hall, Annandale, Virginia, for Appellant. Gregory
Harold Counts, TYLER, BARTL, GORMAN & RAMSDELL,
P.L.C., Alexandria, Virginia, for Appellee.

## OPINION

DUNCAN, Circuit Judge:

James Duncan, acting as the administrator of the estate of Meigan Lin Duncan a/k/a Yang Chun Song, ("the Estate") appeals an order of the district court granting summary judgment to Jacqueline Duncan in this adversary proceeding[1] brought by the Estate to challenge the dischargeability of a judgment debt owed by Mrs. Duncan arising out of a state wrongful death action. The Estate contends that the district court erred in granting summary judgment to Jacqueline Duncan based on the collateral estoppel effect of the state court judgment. Because the issues decided in the state court proceedings were not identical to and, therefore, could not collaterally estop litigation of the controlling issue in this adversary proceeding, we reverse the district court order and remand for further proceedings.[2]

I.

On June 9, 1998, Meigan Duncan ("Meigan"), the adopted minor child of James and Jacqueline Duncan, died as a result of drowning in a bathtub while in Jacqueline Duncan's care and custody. Subdural hemorrhaging and cerebral edema were contributing causes of the child's death. The Virginia Medical Examiner performed an autopsy and listed the drowning as a homicide on the death certificate.

On May 18, 2000, James Duncan, as representative of Meigan Duncan's estate, filed suit against Jacqueline Duncan for wrongful death in Virginia state court seeking both compensatory and punitive

---

[1]"Adversary proceeding" is a term of art used in bankruptcy practice for a lawsuit brought within a bankruptcy proceeding for one or more of the reasons specified in Bankruptcy Rule 7001. Here, the Estate brought an adversary proceeding under Bankruptcy Rule 7001(6) to determine the dischargeability of a debt.

[2]Because we reverse on this ground, we need not reach the Estate's additional argument that the district court procedurally erred by entering summary judgment in favor of Mrs. Duncan because she had not moved for it and had not contended below that there was an absence of material issue of fact that justified entry of judgment in her favor.

damages. The lawsuit contended that Jacqueline Duncan caused Meigan's death either by assaulting her and then leaving her in the bathtub unattended to drown or intentionally drowning her to obscure evidence of previous abuse. At the close of trial, the jury returned an award in favor of Meigan's estate. The jury awarded $15,000 in compensatory damages and $500,000 in punitive damages, which was later reduced, against Jacqueline Duncan.

On April 29, 2003, Jacqueline Duncan filed a petition for Chapter 7 bankruptcy in the Eastern District of Virginia and listed the wrongful death award as a debt. The Estate brought this adversary proceeding to contest the dischargeability of the award under 11 U.S.C. § 523(a)(6), which makes debts that arise from willful and malicious injuries nondischargeable in bankruptcy. The Estate then moved for offensive summary judgment, arguing that the state court judgment collaterally estopped relitigation of the controlling issue of whether Jacqueline Duncan intended to injure Meigan. Jacqueline Duncan opposed the Estate's motion, but did not cross-move for summary judgment.

The bankruptcy court granted the Estate's motion in part, finding that Jacqueline Duncan struck Meigan, that the injury was the proximate cause of Meigan's death, and that the blow was intentional.[3] However, the bankruptcy court denied the Estate summary judgment on the issue of whether the award to the Estate was nondischargeable as arising from a willful and malicious injury under § 523(a)(6), finding that issue not to be collaterally estopped by the state wrongful death judgment.

The Estate then sought and was granted leave to appeal the order of the bankruptcy court on an interlocutory basis to the district court. After considering the parties' arguments, the district court held that Jacqueline Duncan's debt to the Estate was dischargeable. The district court reached this conclusion by initially finding that the Estate had proved by a preponderance of the evidence that the elements of collateral estoppel had been established. The district court nevertheless went on to hold that the Estate had failed to meet the stringent requirement for a finding of nondischargeability under *Kawaauhau v.*

---

[3]These findings were not challenged in this appeal.

*Geiger*, 523 U.S. 57, 61 (1998) as a matter of law. In *Geiger*, the Supreme Court found that Congress intended a debt to be nondischargeable under § 523(a)(6) only if the underlying injury was a deliberate or intentional one. According to the district court, the jury verdict in state court precluded such a finding. The district court therefore held that Jacqueline Duncan's debt, stemming from that verdict, was dischargeable as a part of her bankruptcy petition. The Estate then appealed to this court.

## II.

"We review the judgment of a district court sitting in review of a bankruptcy court *de novo*, applying the same standards of review that were applied in the district court." *In re Bogdan*, 414 F.3d 507, 510 (4th Cir. 2005). We review findings of fact for clear error and questions of law *de novo*. *Id.*

## III.

The Estate argues that the district court erred by concluding that the state court judgment collaterally estopped it from showing that the debt was nondischargeable as arising from a willful and malicious injury. The Estate argues, to the contrary, that the state court judgment collaterally estopped Jacqueline Duncan from showing that the debt *was* dischargeable. We conclude, however, that the state court judgment does not support an application of collateral estoppel to the ultimate issue in the Estate's adversary proceeding and, therefore, neither party is entitled to summary judgment.

State court judgments can collaterally estop the litigation of issues in adversary proceedings in federal bankruptcy court. *See In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997). When determining whether a state court judgment has such a preclusive effect, we apply the relevant state law of collateral estoppel. *Id.* Here, because the underlying wrongful death action was litigated in Virginia, we will apply the law of the Commonwealth.

Under Virginia law, a party invoking collateral estoppel must prove the following five elements: (1) the parties to the two proceedings

must be the same or in privity; (2) the prior proceeding must have resulted in a valid and final judgment against the party against whom preclusion is sought or his privy; (3) the factual issue to be precluded must have been actually litigated in the prior proceeding; (4) the factual issue to be precluded must have been essential to the judgment in the prior proceeding; and (5) there must be mutuality, "that is, a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite result." *TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 22-23, 472 S.E.2d 274, 275 (1996). An issue is subject to collateral estoppel only if it is *identical* to an issue decided in a prior proceeding. *See Angstadt v. Atlantic Mut. Ins. Co.*, 249 Va. 444, 447, 457 S.E.2d 86, 87-88 (1995); *Sevachko v. Commonwealth*, 32 Va. App. 561, 564-65, 529 S.E.2d 803, 804 (2000).

The first two elements of this analytical framework present no difficulty here. Both the Estate and Jacqueline Duncan were parties to the state court proceeding that resulted in a valid and final judgment against Jacqueline Duncan. The fifth element, mutuality, likewise presents no difficulty. The state court litigation necessarily bound both the Estate and Jacqueline Duncan because they were the only parties to that proceeding. *See Angstadt*, 249 Va. at 447, 457 S.E.2d at 88. Therefore, the question of whether collateral estoppel applies turns on resolution of the third and fourth elements of the analysis: whether the issue to be precluded was actually litigated in and necessary to the state court judgment.

The controlling issue in the adversary proceeding is whether Jacqueline Duncan intended to injure her daughter. Under 11 U.S.C. § 523(a)(6), a debt is not dischargeable in a Chapter 7 bankruptcy if it arises from a "willful and malicious injury by the debtor to another." 11 U.S.C. § 523(a)(6). As the Supreme Court instructs in *Geiger*, § 523(a)(6) applies only to "acts done with *the actual intent to cause injury*." 523 U.S. at 61 (emphasis added). Section 523(a)(6) is not satisfied by negligent, grossly negligent or reckless conduct. *Id.* at 62-64; *Zygulski v. Daugherty*, 236 B.R. 646, 653 (Bankr. N.D. Ind. 1999); *In re Scarlata*, 127 B.R. 1004, 1013 (Bankr. N.D. Ill. 1991). Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). *See In re Moore*, 357 F.3d 1125, 1128 (10th

Cir. 2004); *In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003); *In re Miller*, 156 F.3d 598, 604 (5th Cir. 1998). "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61 (emphasis in original).

Therefore, in order for collateral estoppel to apply here, the issue of whether Jacqueline Duncan intended to injure Meigan (as opposed to engaging in an intentional act that injured the child) must have been both litigated in and necessary to the state court proceeding. *Sharma*, 252 Va. at 22-23, 472 S.E.2d at 275. It must also be identical to an issue litigated in the state court. *Angstadt*, 249 Va. at 447, 457 S.E.2d at 87-88. The Estate grounds its argument for precluding the litigation of this issue on two aspects of the state court judgment: (a) the finding that Jacqueline Duncan was liable for wrongful death, and (b) the jury's award of punitive damages. We will consider each in turn.

### 1.   Wrongful Death

The finding that Jacqueline Duncan was liable for wrongful death does not support the application of collateral estoppel because it was judged by a different legal standard than the "willful and malicious injury" inquiry under § 523(a)(6). The Estate filed suit against Jacqueline Duncan under Va. Code Ann. § 8.01-50, which governs wrongful death actions in the Commonwealth. That statute provides for a cause of action "[w]henever the death of a person [is] caused by the wrongful act, neglect, or default" of another party. Va. Code Ann. § 8.01-50. At trial, the state court instructed the jury that, in order to find Jacqueline Duncan liable for wrongful death, it had to find that "the Defendant was willful and wanton in her conduct toward her daughter" and that such conduct was the proximate cause of Meigan's death. J.A. 285E. The judge defined the term "willful and wanton conduct" as

> acting consciously in disregard of [Meigan] or acting with a reckless indifference to the consequences to [Meigan] when the Defendant is aware of her conduct and is also aware, from her knowledge of existing circumstances and conditions, that her conduct would probably result in injury to [Meigan].

J.A. 87.

This definition created two distinct categories of "willful and wanton conduct: "(1) conduct that was in conscious disregard of Meigan, and (2) conduct that exhibited reckless indifference to the consequences to Meigan. Both of these categories set a lower bar for a finding of "willful and wanton conduct" than § 523(a)(6) sets for a finding of a "willful and malicious injury" because neither required the Estate to prove that Jacqueline Duncan intended to injure Meigan. Therefore, the wrongful death judgment did not involve an identical issue to the controlling issue here and does not support entry of summary judgment in favor of either party based on collateral estoppel. *See Angstadt*, 249 Va. at 447, 457 S.E.2d at 88.

### 2.    Punitive Damages

The state court judgment for punitive damages likewise does not support application of collateral estoppel because the record does not establish that it was based on a finding identical to the controlling issue under § 523(a)(6). *See id.* The state court jury entered a punitive damages award against Jacqueline Duncan based on the following instruction:

> If you find your verdict for the Plaintiff and if you believe by the greater weight of the evidence that the Defendant's conduct was willful, one, or was so reckless as to evince a conscious disregard for the safety of [Meigan] you may also award punitive damages to the Plaintiff.

J.A. 285G. Under this instruction, the jury could have found that Jacqueline Duncan was liable for either willful conduct or reckless conduct. The record contains no indication of which of these two standards the jury employed.

It is this gap in the record that renders summary judgment based on collateral estoppel inappropriate. One of the two standards in the punitive damages instruction — recklessness — is satisfied by conduct that is inadequate for purposes of § 523(a)(6). *Geiger*, 523 U.S. at 64 (1998) ("debts arising from recklessly . . . inflicted injuries do

not fall within the compass of § 523(a)(6)"). Even if we were to assume that the willful conduct portion of the punitive damages instruction is synonymous with a "willful and malicious injury" under § 523(a)(6), nothing before us suggests that the jury made its determination on that basis. We cannot say that the punitive damages award necessarily involved a finding identical to the § 523(a)(6) inquiry since the jury could have based its award on a finding of recklessness. Both because such a possibility exists and because Virginia law requires an identity of issues for collateral estoppel to apply, we cannot conclude that the question of whether Meigan's death was a "willful and malicious injury" was litigated in and necessary to the award of punitive damages. Accordingly, application of collateral estoppel based on the punitive damages award is inappropriate here.

At bottom, neither the wrongful death nor the punitive damages award in the state court involved the issue of whether Jacqueline Duncan intended to injure Meigan that controls resolution of this adversary proceeding. Because issues must be identical for collateral estoppel to apply, and such identity is lacking here, the state court judgment does not support application of collateral estoppel to the Estate's nondischargeability claim under 11 U.S.C. § 523(a)(6).

IV.

In light of the foregoing, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

*REVERSED IN PART AND REMANDED*