**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1372

In re:  CHARLES TAYLOR MUHS,

> Debtor.

------------------------------

TKC AEROSPACE INC.,

> Plaintiff - Appellee,

> v.

CHARLES TAYLOR MUHS,

> Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, District Judge.  (1:17-cv-01304-LO-TCB)

Argued:  March 19, 2019                                    Decided:  May 8, 2019

Before MOTZ, KING, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** Richard George Hall, Annandale, Virginia, for Appellant.  Douglas Clark Proxmire, VENABLE LLP, Tysons Corner, Virginia, for Appellee.  **ON BRIEF:**

Stephen K. Gallagher, Kevin W. Weigand, VENABLE LLP, Tysons Corner, Virginia, for Appellee.

———————————

THACKER, Circuit Judge:

At the root of this appeal is a provision in the United States Bankruptcy Code stating that a debt "for *willful and malicious injury* by the debtor to another entity" is nondischargeable in Chapter 7 bankruptcy. 11 U.S.C. § 523(a)(6) (emphasis supplied). In 2016, Charles Taylor Muhs ("Appellant") filed for Chapter 7 bankruptcy and attempted to discharge a judgment in excess of $20 million entered by an Alaska district court against him and in favor of TKC Aerospace, Inc. ("TKCA"). TKCA, however, claims that the judgment is nondischargeable because the damages award was based on Appellant's willful and malicious misappropriation of TKCA's trade secrets.

The bankruptcy court, applying collateral estoppel principles, concluded that Alaska's award of damages to TKCA necessarily meant that Appellant willfully and maliciously injured TKCA for purposes of § 523(a)(6), granted summary judgment in favor of TKCA, and determined that the entire judgment award was nondischargeable. The district court affirmed.

We reverse. The Supreme Court has held that § 523(a)(6) requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphases in original). Likewise, this court has held that a creditor challenging dischargeability under § 523(a)(6) must prove that the debtor had an "inten[t] to injure." *In re Duncan*, 448 F.3d 725, 730 (4th Cir. 2006). Because neither the Alaska district court, nor the bankruptcy court, determined the precise issue of whether Appellant intended to injure TKCA, collateral estoppel and

3

summary judgment were inappropriate. Therefore, we remand to the district court with instructions to remand to the bankruptcy court for further proceedings.

I.

A.

Background

In 2007, Appellant became Vice President of Business Development for TKCA, an Alaska corporation specializing in aircraft procurement, logistics, and support. In that capacity, Appellant had access to TKCA's proprietary information, and his contract with TKCA prohibited him from disclosing confidential information to any third party or competing with TKCA for six months after his employment terminated. From 2009 to 2011, TKCA competed for and won Department of State ("DOS") contracts for Bombardier Dash 8 aircrafts, modified to meet DOS needs. As part of this process, TKCA would -- with the help of Appellant -- submit proposals to DOS describing how it would perform such modifications.

On March 28, 2011, Appellant left his position with TKCA to accept a position with Knowledge International in Alexandria, Virginia, although he continued to work for TKCA on a part-time basis. Appellant also began to work closely with Phoenix Heliparts, Inc. ("PHP"), an Arizona corporation and (at the time) a competitor of TKCA, to secure aircraft and develop bids for possible DOS solicitation. On August 5, 2011, DOS issued a solicitation for up to two more Dash 8 aircrafts, and PHP submitted a proposal. DOS awarded the contract to PHP.

4

B.

The Alaska and Arizona Actions

1.

Parallel Litigation

On September 26, 2011, TKCA filed a lawsuit in the District of Alaska against Appellant, alleging breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, tortious interference with prospective business, fraud, and violation of the Alaska Uniform Trade Secrets Act (the "Alaska Action"). *See* Compl., *TKC Aerospace, Inc. v. Muhs*, No. 3:11-cv-189 (D. Alaska filed Sept. 26, 2011), ECF No. 1, at 12–17. Specifically, the complaint alleged that Appellant "stole a corporate business opportunity from TKCA and delivered it to a competitor, using TKCA proprietary information." *Id*. at 2.

On October 20, 2011, TKCA filed a parallel suit against PHP in the Superior Court for Maricopa County, Arizona, alleging misappropriation of trade secrets under the Arizona Uniform Trade Secrets Act, intentional interference with business expectancy, unfair competition, and conversion. *See TKC Aerospace, Inc. v. Phoenix Heliparts, Inc*., No. CV2011-128889 (Ariz. Sup. Ct. filed Oct. 20, 2011) (the "Arizona Action"). Although he was a witness in the Arizona Action, Appellant was not named as a party. The Alaska Action and the Arizona Action carried on simultaneously.

On February 21, 2012, Appellant filed a motion to stay the Alaska Action. In support of the motion, Appellant's counsel -- the same counsel representing PHP in the Arizona Action -- stated that the Arizona Action "involv[ed] the same plaintiff . . . and

5

same factual and legal issues as those in the Alaska Action," and "[t]he underlying factual allegations in [both complaints] are virtually verbatim, the gravamen of the claims are identical, and the relief requested is virtually identical." J.A. 193.[1] The request for stay also stated, "this pending action is . . . substantially similar to and significantly parallels the Arizona Action," *id*. at 199, and "[i]f TKCA prevails in the Arizona Action, . . . then [Appellant] would be collaterally estopped from arguing differently in this Court," *id*. at 214 n.3 (alterations omitted). The Alaska court denied the motion to stay. After granting summary judgment on some claims, however, on March 8, 2013, the Alaska court deferred further scheduling until the Arizona Action was complete.

## 2.

### The Arizona Judgment

Meanwhile, from March 2012 to October 2013, the Arizona state court conducted a bench trial for over 40 days on the issue of PHP's liability regarding TKCA's trade secrets and PHP's misconduct. Ultimately, on January 30, 2015, the Arizona state court entered judgment in favor of TKCA and against PHP on the Arizona Uniform Trade Secrets Act claim, the tortious interference claim, and the common law unfair competition claim, in the total amount of $20,295,782.58. This amount was broken down as follows: $2,883,055.86 in lost profits; $3,882,205 in research and development costs; and $13,530,521.72 in exemplary damages. As to the latter, the Arizona state court

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

stated, "PHP [must] pay exemplary damages pursuant to A.R.S. § 44–403(B)[2] in an amount double awarded to TKCA for its lost profit and research and development costs." J.A. 105. The Arizona court found that PHP engaged in "willful and malicious misconduct," *id*. at 59, and "PHP willfully and maliciously misappropriated TKCA's trade secrets," *id.* at 66. It also found that "PHP formed an agency relationship with [Appellant]," and "[b]ecause of th[is relationship], this court will attribute [Appellant's] acts to PHP." *Id*. at 74, 75.

But even though the Arizona state court attributed Appellant's actions to PHP, the Arizona Action was not based *solely* on the actions of Appellant. Indeed, the Arizona court also found the following regarding Tina Cannon, president of PHP at the relevant time, and her husband Darrin Cannon, who was vice-president:

- "[T]he Cannons wiped their computers after receiving a litigation hold letter and after trial started. The court has rarely, if ever in a civil matter, witnessed a party engage in such flagrant misconduct and act with such disregard for the truth and such profound disrespect for the law." J.A. 60;

- "This court finds that Darrin Cannon installed and ran CCleaner with the intent to delete any evidence that PHP had misappropriated TKCA's trade secrets and proprietary and confidential information and also to conceal PHP's efforts to delete relevant and material evidence of its misconduct." J.A. 60–61;

- "During trial, Tina Cannon and [Appellant] provided improbable explanations when confronted with overwhelming

---

[2] This statute provides, "If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award [for actual loss from misappropriation and unjust enrichment]." Ariz. Rev. Stat. Ann. § 44-403(B).

7

evidence of PHP's efforts to secure the award of the D[O]S contract." J.A. 65; and

- Tina Cannon "induced [Appellant] to violate his non-compete agreement with TKCA and disclose TKCA trade secrets in further breach of his employment contract." J.A. 80.

Accordingly, when assessing whether exemplary damages were appropriate pursuant to A.R.S. § 44–403(B) for willful and malicious misappropriation, the Arizona court stated the following, inter alia:

> Attempts to conceal wrongful conduct with respect to trade secrets provide evidence of willful and malicious misappropriation. . . .
>
> [T]he following are just a few examples that establish PHP willfully and maliciously engaged in misconduct. Despite knowing [Appellant's] contract with TKCA had a non-compete clause, the Cannons induced [Appellant] to misappropriate TKCA's trade secrets in order to compete directly with TKCA. [Appellant], on behalf of PHP, withheld vital information from TKCA so that PHP could establish a material and temporal advantage in preparing a successful proposal in response to the D[O]S solicitation. Tina Cannon knew that [Appellant] had uploaded TKCA proprietary documents to PHP's servers and PHP knowingly used the uploaded documents to prepare its bid. PHP further knew that using the uploaded documents would harm TKCA. . . .
>
> PHP intentionally wip[ed] company servers after learning of a subpoena, erasing company laptops in the evening and early morning hours before court-ordered forensic imaging started . . . .

J.A. 87. After awarding exemplary damages, the Arizona court noted that TKCA also satisfied its burden of proof on punitive damages, explaining, "This court finds by clear and convincing evidence that *PHP* engaged in outrageous conduct and *acted with an evil mind intending to injure* TKCA by intentionally interfering with TKCA's contracts and

8

opportunities and then using TKCA's proprietary information to misappropriate those opportunities." *Id*. at 88–89 (emphases supplied). The court made no specific finding, however, that Appellant (who, again, was not a party to the Arizona Action) intended to injure TKCA.[3]

3.

The Alaska Judgment

Based on the Arizona judgment, on June 12, 2015, TKCA filed a motion for summary judgment in the Alaska Action. Without holding a hearing, the Alaska court granted the motion on October 22, 2015. It reasoned that, even though Appellant was not a party to the Arizona Action, the Arizona court's conclusion and award of damages were based on "findings that [Appellant] worked with PHP to compete for the D[O]S contract, that [Appellant] provided TKCA documents to PHP, and that [Appellant] worked on PHP's D[O]S Dash 8 proposal." J.A. 30–31. Then the Alaska court applied principles of equitable estoppel and quasi-estoppel to reach the conclusion that "[Appellant] agreed to be bound by the decision in the Arizona Action and thus he was in privity with PHP. Because [Appellant] was in privity with PHP, [he] is collaterally estopped from relitigating TKCA's claims against him." *Id*. at 38.

---

[3] PHP filed for Chapter 11 bankruptcy on September 18, 2015, staying any potential appeal of the Arizona Action. *See* 11 U.S.C. § 362(a)(1) (bankruptcy petition acts as a stay to the "continuation . . . of a judicial . . . proceeding against the debtor" that was commenced before bankruptcy).

Accordingly, the Alaska court held that TKCA was entitled to judgment against Appellant for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with prospective economic benefit, and violation of the Alaska Trade Secrets Act. Per the Alaska court, TKCA was entitled to the following:

    a.      Lost Profits: $2,883,055.86

    b.      Research and Development: $3,882,205.00

    c.      Exemplary Damages: $13,530,521.72.

J.A. 42. Thus, Appellant was liable for $20,295,782.58, the same amount imposed on PHP in the Arizona Action.

As noted above under "c.," the Alaska court awarded exemplary damages in the amount of $13,530,521.72 to TKCA. In awarding these damages, the Alaska court dropped a footnote that stated, "Per AS 45.50.915(b)," with no further analysis. J.A. 42 n.37. Section 45.50.915(b) is part of the Alaska Uniform Trade Secrets Act and provides:

> (a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

> (b) *If wilful and malicious misappropriation exists*, the court may award exemplary damages in an amount not exceeding twice the damages awarded under (a) of this section.

AS § 45.50.915 (emphasis supplied). Like the Arizona court, the Alaska court made no specific finding that Appellant intended to injure TKCA.[4]

C.

Federal Bankruptcy Proceedings

On July 1, 2016, Appellant filed a petition for Chapter 7 bankruptcy in the Bankruptcy Court for the Eastern District of Virginia and sought to discharge the Alaska judgment. *See* Petition, *In re Muhs*, No. 16-12288 (Bankr. E.D. Va. filed July 1, 2016), ECF No. 1. TKCA then filed an adversary complaint in the bankruptcy court, alleging that the Alaska judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(2) (any debt for "money . . . to the extent obtained by . . . false pretenses [or] actual fraud" is nondischargeable in Chapter 11 proceedings); § 523(a)(4) (same for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"); and § 523(a)(6) (same for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity"). *See* Compl., *In re Muhs*, No. 16-01192 (Bankr. E.D. Va. filed Oct. 11, 2016).

1.

TKCA's First Motion

On December 19, 2016, TKCA filed a motion for judgment on the pleadings based on the Alaska judgment. It contended:

---

[4] The Alaska judgment has been appealed to the Court of Appeals for the Ninth Circuit, but the appeal was administratively closed in May 2017 pending bankruptcy proceedings.

> This court should estop [Appellant] from re-litigating the same facts and issues that two other courts have already addressed. To do so, the Court should apply collateral estoppel to the findings of the Arizona and Alaska Courts and hold that [Appellant's] debt from the Alaska Judgment is not dischargeable under 11 U.S.C. §§ 523(a)(2) [false pretenses or fraud], (a)(4) [fraud or defalcation in a fiduciary capacity, embezzlement, or larceny], and (a)(6) [willful and malicious injury].

Mot. J. Pleadings, *In re Muhs*, No. 16-01192 (Bankr. E.D. Va. filed Dec. 19, 2016), ECF No. 7, at 9. The bankruptcy court held a hearing on this motion. There, TKCA contended, "[The] Alaska and Arizona [courts] awarded exemplary damages, which under their statutes . . . exemplary damages can only be awarded if there is willful and malicious misappropriation." Trans., *In re Muhs*, No. 16-01192 (Bankr. E.D. Va. March 9, 2017), ECF No. 22, at 10–11. The bankruptcy court denied the motion, explaining in open court:

> [T]his is a Court of equity, so I am going to use my power to apply equitable estoppel in this case in order for a trial to go on. I'm not saying that [Appellant] has a prayer of winning. What I am saying is that it is clear by the judgment in the Arizona Court that [Appellant's] attorney was not working in the best interests from time to time of either of its clients, PHP or [Appellant]. . . . I think that there definitely are some disputed facts, and I want to know what they are. I want to hear both sides.

*Id*. at 37–38.

TKCA then moved for leave to appeal the bankruptcy court's interlocutory order to the district court. *See* Mot. Leave to Appeal, *TKC Aerospace, Inc.*, No. 1:17-cv-372 (E.D. Va. Mar. 29, 2017), ECF No. 1. The district court granted the motion for leave to appeal and reversed the bankruptcy court, explaining that it erred in "finding that

12

collateral estoppel did not apply to [the Alaska court's] grant of summary judgment." J.A. 222. The district court explained that the issues in the Alaska Action and bankruptcy proceeding were "identical," but it did not determine whether the Alaska court found that Appellant had an intent to injure TKCA. *Id*. at 227. Instead, the district court made the general proclamation that a judgment "resulting from . . . willful and malicious injury against another [is] barred from discharge in a bankruptcy proceeding." *Id*. (citing 11 U.S.C. § 523). Thus, it concluded "[t]he doctrine of collateral estoppel bars re-litigation of the facts in the Alaska case." *Id*. at 229. The district court remanded for further proceedings.

2.

TKCA's Second Motion

On November 2, 2017, in the bankruptcy court once again, TKCA filed a renewed motion for judgment on the pleadings. The very next day, the bankruptcy court entered an order granting summary judgment to TKCA, concluding that the Alaska judgment was nondischargeable pursuant to § 523(a)(6) only. It explained, "With the district court's guidance in mind, applying principles of collateral estoppel, this Court finds that the Alaska court's findings satisfy the standard for nondischargeability under 11 U.S.C. § 523(a)(6)." J.A. 236. It did not address § 523(a)(2) or (a)(4).

Appellant appealed to the district court. *See* Notice of Appeal, *Muhs v. TKC Aerospace Inc*., 1:17-cv-1304 (E.D. Va. filed Nov. 16, 2017), ECF No. 1. The district court affirmed the bankruptcy court as to nondischargeability under § 523(a)(6). It held that because the Alaska judgment "awarded exemplary damages to [TKCA] for

13

Appellant's violation of Alaska's Uniform Trade Secrets Act," which are "only for willful and malicious conduct," then the Alaska judgment is nondischargeable under § 523(a)(6). J.A. 310. Appellant timely noted this appeal. We possess jurisdiction pursuant to 28 U.S.C. § 1291 and § 158(d).

## II.

This court "review[s] the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." *In Re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999). Specifically, we review the factual findings of the bankruptcy court for clear error, while we review questions of law de novo. *See id.* "Although collateral estoppel may well preclude a bankruptcy court from relitigating previously-decided issues, the ultimate issue of dischargeability is a legal issue, and exceptions to discharge are narrowly construed." *In re McNallen*, 62 F.3d 619, 625 (4th Cir. 1995) (citations omitted).

## III.

In this appeal, we are asked to decide whether Appellant is collaterally estopped from arguing in bankruptcy court that the Alaska judgment is dischargeable under § 523(a)(6), because the Alaska court awarded exemplary damages to TKCA based on willful and malicious misappropriation under Alaska law. As the party challenging the dischargeability of a debt, TKCA bears the burden of proving the debt nondischargeable by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287, 291 (1991).

14

TKCA contends that the "Alaska court's findings satisfy all the requisite elements for 'willful and malicious' injury to TKCA under 11 U.S.C. § 523(a)(6)," and "[t]here is no meaningful difference in the definition of 'willful and malicious' under Alaska law and [§ 523(a)(6)]." Appellee's Br. 9–10. Appellant, however, maintains that "in a proceeding involving 11 U.S.C. § 523(a)(6), 'willful and malicious' conduct requires a finding of a specific intent to injure," and there was no such finding made in the Alaska Action. Appellant's Br. 9. We agree with Appellant.

## A.

## Collateral Estoppel

In *Grogan v. Garner*, the Supreme Court concluded that principles of collateral estoppel apply in dischargeability proceedings in bankruptcy. 498 U.S. at 284 & n.11. But we must first address which jurisdiction's estoppel rules apply. As a general matter, "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). When a federal court exercises diversity jurisdiction over a state law claim, as in the Alaska Action, the federal rule "is to apply 'the law that would be applied by state courts in the State in which the federal diversity court sits' as long as the state rule is not 'incompatible with federal interests.'" *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019) (quoting *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 509 (2001)). Finding no reason why Alaska collateral estoppel law would be incompatible with federal interests, we apply the following test:

> Collateral estoppel prohibits relitigation of issues *actually decided* in earlier proceedings where: (1) the party against whom the preclusion is employed was a party to or in privity

15

with a party to the first action; (2) the issue precluded from relitigation is *identical* to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was *essential* to the final judgment.

*Strong v. Williams*, 435 P.3d 872, 875 (Alaska 2018) (emphases supplied). Accordingly, first, we will assess the issue Appellant wants to litigate in the bankruptcy court (i.e., whether the debt is for a willful and malicious injury for purposes of § 523(a)(6)). Next, we will evaluate whether collateral estoppel precludes litigation of that issue in bankruptcy court.

B.

Bankruptcy Requirement: Intent to Injure

The statue at issue here -- § 523(a)(6) -- provides that a debt is not dischargeable in a Chapter 7 proceeding if it is a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court and this court have decided that a debt arising from an injury attributable to mere negligent or reckless conduct does not satisfy the "willful and malicious" requirement of (a)(6); in addition, it is not enough that the conduct underlying the injury was intentional. Rather, the debtor must have engaged in such conduct with the actual intent to cause injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Duncan*, 448 F.3d 725, 729 (4th Cir. 2006).

16

1.

### *Kawaauhau v. Geiger*

In *Geiger*, Margaret Kawaauhau sought treatment from Dr. Paul Geiger for a foot injury.  *See* 523 U.S. at 59.  Dr. Geiger knew intravenous penicillin would be most effective to decrease the risk of infection, but he prescribed oral penicillin because Kawaauhau wished to keep the cost down.  Then, he left town and placed her in the care of other physicians, who decided she should be transferred to a specialist.  But when Dr. Geiger returned, he disagreed and cancelled her transfer because he thought the infection had subsided; however, Kawaauhau's condition worsened, resulting in the amputation of her right leg below the knee.  *See id*.

Kawaauhau and her husband sued Dr. Geiger for malpractice, and a jury awarded them $355,000 in damages.  Dr. Geiger did not carry malpractice insurance and ended up filing for bankruptcy and seeking to discharge the judgment against him under § 523(a)(6).  *See Geiger*, 523 U.S. at 59–60.  The bankruptcy court decided the debt was nondischargeable because the doctor's "treatment fell far below the appropriate standard of care and therefore ranked as 'willful and malicious.'"  *Id*. at 60.

The Eighth Circuit, sitting en banc, reversed the bankruptcy court and held that the debt was dischargeable, and the Supreme Court affirmed.  The Supreme Court explained:

> We confront this pivotal question concerning the scope of the "willful and malicious injury" exception:  Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury (as [the Kawaauhaus] urge), or only acts done with the *actual intent to cause injury* (as the Eighth Circuit ruled)?  The words of the statute strongly support the Eighth Circuit's reading.

17

*Geiger*, 523 U.S. at 61 (emphasis supplied). The Court reasoned, "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphases supplied). Moreover, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61–62 (quoting Restatement (Second) of Torts § 8A) (emphasis in *Geiger*). The Court rejected the notion that a willful and malicious injury should encompass "a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor," such as a "knowing breach of contract." *Id.* at 62. In the end, "to be nondischargeable, the judgment debt must be for willful and malicious *injury*," and "[n]egligent or reckless acts . . . do not suffice to establish that a resulting injury is willful and malicious." *Id.* at 63–64 (emphasis in original).

2.

### *In re Duncan*

This court has applied the *Geiger* principle in only one published decision, *In re Duncan*, 448 F.3d 725 (4th Cir. 2006). There, a mother ("Jacqueline") was found liable for the wrongful death of her adopted child, after her child drowned in the bathtub while in Jacqueline's care. Because the child had subdural hemorrhaging and cerebral edema, the wrongful death lawsuit filed by the child's father alleged that Jacqueline either abused

18

and assaulted the child and then left her in the bathtub unattended to drown, or intentionally drowned her to obscure evidence of the abuse. *See id.* at 727. The jury in the wrongful death suit awarded the child's estate (the "Estate") $15,000 in compensatory damages, and $500,000 in punitive damages, which was later reduced. *See id.* Because the jury awarded punitive damages, it necessarily decided that Jacqueline engaged in "willful and wanton" conduct, which was defined as:

> *acting consciously in disregard of [the child] or acting with a reckless indifference to the consequences to [the child]* when the Defendant is aware of her conduct and is also aware, from her knowledge of existing circumstances and conditions, that her conduct would probably result in injury to [the child].

*Id.* at 729 (emphasis supplied).

Jacqueline thereafter filed a Chapter 7 bankruptcy petition and listed the wrongful death award as a dischargeable debt. *See Duncan*, 448 F.3d at 727. The Estate argued that it was not dischargeable under § 523(a)(6), and, based on the wrongful death judgment and punitive damages award, Jaqueline was collaterally estopped from arguing that the injury was not willful or malicious. *See id.*

Applying Virginia law (because the wrongful death judgment originated in Virginia state court), we held that collateral estoppel did not apply to the willful and malicious issue because whether Jacqueline "intended to injure" her daughter was neither identical to, nor necessary to, the issue litigated in the wrongful death proceedings. *Duncan*, 448 F.3d at 730. Indeed, Virginia law allowed for an award of punitive damages for conscious disregard or reckless indifference, neither of which rose to the level of intent to injure under *Geiger*. And because the Estate was not required "to prove

19

that Jacqueline Duncan intended to injure [the child] . . . , the wrongful death judgment did not involve an identical issue to the controlling issue here." *Id*. at 730. We concluded, "At bottom, neither the wrongful death nor the punitive damages award in the state court involved the issue of whether Jacqueline Duncan intended to injure [the child] that controls resolution of this adversary proceeding." *Id*. Thus, we held that collateral estoppel did not apply in the bankruptcy proceedings.

Therefore, based on this case law, the controlling issue in the adversary bankruptcy proceeding has to be whether Appellant intended to injure TKCA. With this in mind, we turn to an analysis of the Alaska court's decision.

C.

Alaska Judgment

We now determine whether, based on the Alaska judgment, Appellant is collaterally estopped in the adversary proceeding from arguing that the debt to TKCA is not for a willful and malicious injury for purposes of § 523(a)(6). Under Alaska law, collateral estoppel prohibits relitigation of an issue "actually decided in earlier proceedings" if TKCA can demonstrate that (1) Appellant was a party to the Alaska Action; (2) the issue precluded from relitigation is identical to the issue decided in the Alaska Action; (3) the issue was resolved by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment. *Strong*, 435 P.3d at 875. Because Appellant was a party in Alaska, and the Alaska judgment was final, we turn to an analysis of whether the issues are identical, were actually decided in Alaska, and were essential to the Alaska judgment.

20

1.

Identical Issues

First, Alaska law requires that the issue to be precluded from relitigation "is identical to the issue decided in the first action." *Strong*, 435 P.3d at 875. However, TKCA has not demonstrated -- and we cannot conclude -- that the meaning of "willful and malicious" under Alaska law is identical to the meaning of "willful and malicious" under the Bankruptcy Code.

As explained above, § 523(a)(6) requires intent to injure, and does not encompass mere negligent or reckless conduct. Alaska has adopted the Uniform Trade Secrets Act ("UTSA"), and neither Alaska's version of the UTSA, nor the UTSA itself, defines the terms willful and malicious. We cannot conclude that just because the words are the same, the meaning is also the same. In fact, many states adopting the UTSA have developed definitions of willful and malicious that fall below the *Geiger* standard. *See, e.g.*, *Mattern & Assocs., L.L.C. v. Seidel*, 678 F. Supp. 2d 256, 271 (D. Del. 2010) (analyzing award of exemplary damages under the Delaware UTSA, explaining, "Delaware courts have defined willfulness as an awareness, *either actual or constructive*, of one's conduct and a realization of its probable consequences, and malice as *ill-will, hatred* or intent to cause injury." (citation and internal quotation marks omitted) (emphases supplied)); *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 946 (7th Cir. 1996) (analyzing award of exemplary damages under the Illinois UTSA, reasoning that the definition of willful and malicious "surely must include an intentional misappropriation *as well as a misappropriation resulting from the conscious disregard of*

21

*the rights of another*" (emphasis supplied)); 12 Pa. C.S.A. § 5302 (Pennsylvania UTSA defining "willful and malicious" as "[s]uch intentional acts *or gross neglect of duty* as to evince a *reckless indifference* to the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness" (emphasis supplied)); *see also HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 959 (D. Ariz. 2013) (noting that the Arizona UTSA does not define "willful and malicious" but adopting Pennsylvania's definition, explaining "the Court considers as instructive decisions from other jurisdictions that have adopted substantially the same provision of the UTSA").

Indeed, TKCA's attempts to define "willful and malicious" in Alaska's version of the UTSA as identical to § 523(a)(6) fall short of its burden. It refers to an Alaska Supreme Court decision stating, "[a]n act is willful if it is done intentionally and purposefully, rather than accidentally or inadvertently." *Walt's Sheet Metal v. Debler*, 826 P.2d 333, 336 (Alaska 1992). It then contends that the Alaska court necessarily determined that Appellant "intentionally and purposefully misappropriated TKCA's trade secrets, which is sufficient to meet the Fourth Circuit standard for willfulness." Appellee's Br. 11. But *Geiger* and *Duncan* specifically instruct that it is not enough to have "a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61. Rather, a bankruptcy court must specifically find a deliberate and intentional *injury*. Therefore, even if TKCA is correct that the Alaska court decided Appellant intentionally and purposefully misappropriated TKCA's trade secrets, that is still not enough. It must have

22

taken the additional step of finding that Appellant, in so doing, intended for TKCA to be injured by that misappropriation.

Therefore, we simply cannot affirm the district court and bankruptcy court's conclusion that the issue Appellant seeks to argue in bankruptcy court is identical to the issue presented in the Alaska Action.

2.

Actually Decided and Essential

Moreover, the issue of whether Appellant intended to injure TKCA was neither "actually decided in," nor "essential to" the Alaska Action. *Strong*, 435 P.3d at 875. The Alaska court never decided whether Appellant intended to injure TKCA, as required by *Geiger* and *Duncan*. Indeed, the only critical determination the Alaska court made was that Appellant was in privity with PHP based on equitable and quasi-estoppel, and therefore, he was collaterally estopped from "relitigating TKCA's claims against him" in Alaska. J.A. 38. TKCA maintains that the Alaska court necessarily made a determination of willfulness and maliciousness in its award of exemplary damages, indicated in a footnote with no analysis. But as mentioned above, the Alaska court made no decision whatsoever that it based those damages on a finding that Appellant intended to injure TKCA. Indeed, the district court's decision on appeal here recognizes this fact. It states that the Alaska judgment awarded exemplary damages for violation of Alaska's UTSA, which can "only [be awarded] for willful and malicious *conduct*." J.A. 310 (emphasis supplied). As explained above, Appellant's conduct is not the issue; rather, it is his intent to injure that matters.

23

TKCA also points to a portion of the Arizona court's decision regarding the award of punitive damages, which states, "This court finds by clear and convincing evidence that PHP engaged in outrageous conduct and acted with an evil mind *intending to injure* TKCA by intentionally interfering with TKCA's contracts and opportunities and then using TKCA's proprietary information to misappropriate those opportunities." J.A. 88–89 (emphasis supplied). Then, TKCA contends that although Appellant was not a party to the Arizona Action, this "evil mind" is attributable solely to Appellant because in the Alaska Action, Appellant's counsel acknowledged "TKCA's claims of wrongdoing by PHP are entirely based on the alleged wrongdoing of [Appellant]." Appellee's Br. 16 n.2 (quoting J.A. 200 (motion to stay Alaska Action)).

But crucially, the Alaska court did not take the additional step of finding that Appellant had the requisite intent to injure (or was estopped from arguing to the contrary) *in the Alaska Action*. Nor would such a finding have been essential to the Alaska court's decision that Appellant was in privity with PHP and thus, he was collaterally estopped from relitigating the issues determined in the Arizona Action.

Therefore, whether Appellant specifically had the requisite intent to injure TKCA was neither actually decided in, nor essential to, the Alaska Action.

3.

For these reasons, collateral estoppel was inappropriate in this case. We reverse the district court and bankruptcy court's reliance on collateral estoppel to determine the nondischargeability of the Alaska judgment, and remand for further proceedings.[5]

IV.

For the foregoing reasons, we reverse the judgment of the district court, with instructions to remand to the bankruptcy court for proceedings consistent with this opinion.

*REVERSED AND REMANDED*

---

[5] TKCA argues in its response brief that we could affirm based on other nondischargeability provisions in the Bankruptcy Code, specifically, § 523(a)(2) and (a)(4). These arguments were raised to the bankruptcy court; however, the bankruptcy and district courts relied only on (a)(6) in the immediate judgments on appeal. These are determinations best left to the bankruptcy court in the first instance. *See In re FirstPay, Inc.,* 391 F. App'x 259, 269 n.7 (4th Cir. 2010) ("Whether FirstPay converted and misappropriated some of its clients' funds in order to make payments to the IRS on behalf of other clients, among other issues, will have to be determined by the bankruptcy court in the first instance."); *In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999) ("The Biondos' state of mind is a question of fact to be determined in the first instance by the bankruptcy court . . . ."); *In re Pucci Shoes, Inc*., 120 F.3d 38, 42 (4th Cir. 1997) (remanding to bankruptcy court for determination of the value of a line of credit because "neither this court nor the district court is authorized to make . . . factual determinations in the first instance"). On remand, the bankruptcy court is free to entertain these possibilities.