In re Alvin FLORIDA, Jr., Debtor.

Alvin FLORIDA, Jr., Appellant,

v.

TICOR TITLE INSURANCE COMPANY OF CALIFORNIA and Chicago Title Insurance Company, Appellees.

BAP No. NC–93–1132–VRJ.
Bankruptcy No. 91–46233–N.
Adv. No. 92–4070–AT.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 22, 1993.

Decided March 3, 1994.

Claude Dawson Ames, Oakland, CA, for Alvin Florida, Jr.

Arnold S. Rosenberg, San Francisco, CA, for Ticor Title Ins. Co.

Before: VOLINN, RUSSELL, and JONES, Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge:

On appeal are separate judgments of non-dischargeability in adversary proceedings under 11 U.S.C. § 523(a)(6).[1] In a U.S. district court action, the court awarded appellee Ticor Title Insurance Company of California treble damages and attorney's fees against the debtor under RICO, as well as a coextensive award for compensatory and punitive damages for fraud. In a state court creditor's suit to collect the district court judgment, Ticor was awarded attorney's fees and costs against the debtor's sister and nephew.

In an unrelated incident, an individual obtained an assault judgment against the debt-

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

or; subsequently, this judgment was obtained by appellee Chicago Title Insurance Company.

The debtor appeals summary judgment in the bankruptcy court determining these judgments to be nondischargeable in their entirety.

## FACTS AND PROCEEDINGS BELOW

### I. Ticor

Prior to bankruptcy, Ticor sued debtor Alvin Florida in district court. After a bench trial, the district court found that Florida, who was attempting to sell certain property, forged a release of an I.R.S. lien which had attached to the property. Because Ticor insured title to the property free of the I.R.S. lien, it was forced to pay its insured when the release was discovered and revoked by the I.R.S. The district court found Ticor's actual loss was $153,922. The court trebled these damages pursuant to the RICO statute, 18 U.S.C. § 1961 et seq. The court also awarded attorney's fees of $124,950, and in addition assessed a discovery sanction of $15,000. Finding that the forgery was "malicious, fraudulent and oppressive," the court awarded a coextensive judgment consisting of $153,922 in compensatory damages and $307,844 in punitive damages. The judgment was affirmed on appeal, and an additional $12,102.50 was awarded for attorney's fees incurred during the appeal. The total judgment against Florida amounted to $613,-818.50. In lieu of a Rule 60(b) motion, Florida filed a complaint in district court for relief from the judgment, alleging newly discovered evidence. This complaint was dismissed with prejudice.

Ticor then brought a creditor's suit in state court against Florida and his sister and nephew, who allegedly held property for Florida, in order to collect its judgment. Ticor collected some $96,000 during these proceedings, but prior to final judgment in the suit, Florida filed bankruptcy. The court awarded Ticor judgment of $124,164 against

Florida's sister and nephew for attorney's fees and costs involved in the creditor's suit. The state court of appeals upheld the judgment. Although the court found that Florida used his sister and nephew as "straw men" to avoid collection of the judgment, the court did not award judgment against Florida because no relief from the stay had been obtained in his bankruptcy. Nevertheless, Ticor included the judgment amount in its claim in Florida's bankruptcy.

### II. Chicago Title

The claim of appellee Chicago Title originates in an unrelated lawsuit involving Florida, Chicago Title, Robert Cooper, and Cooper's corporation, among others. In this lawsuit, Cooper prevailed on a claim against Florida for assaulting him with a gun and obtained a damage judgment of $10,000. Cooper also became indebted to Chicago Title, which subsequently obtained Cooper's judgment against Florida by levy.

After Florida filed bankruptcy, Ticor and Chicago Title brought an adversary proceeding to determine the dischargeability of their debts pursuant to 11 U.S.C. § 523(a)(2) and (6). On motion for summary judgment, the bankruptcy court determined the debts to be nondischargeable in their entirety under § 523(a)(6),[2] including Ticor's expenses in the state court creditor's suit.

Florida timely appeals all aspects of the summary judgment except for the compensatory damages awarded to Ticor in the district court suit.

## ISSUES PRESENTED

(1) Whether punitive damages may be excepted from discharge under § 523(a)(6).

(2) Whether discovery sanctions, attorney's fees, and collection costs arising out of litigation may be excepted from discharge if the underlying claim is nondischargeable.

(3) Whether the doctrine of collateral estoppel precludes consideration of additional

---

**2.** 11 U.S.C. § 523 Exceptions to discharge. (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . .

facts concerning the willful and malicious nature of Florida's actions.

(4) Whether a debt arising out of assault is dischargeable when the holder of the judgment on the debt is not the party originally injured, but a successor in interest to the judgment.

(5) Whether attorney's fees and costs of a state court creditor's suit may be adjudged nondischargeable when the state court has not awarded a judgment against the debtor.

## STANDARD OF REVIEW

█ Summary judgments are reviewed *de novo, In re Bullion Reserve of N. Am.*, 922 F.2d 544, 546 (9th Cir.1991), as are the bankruptcy court's conclusions of law, *In re Britton*, 950 F.2d 602, 604 (9th Cir.1991).

## DISCUSSION

### I.  Punitive damages are nondischargeable under § 523(a)(6).

█ *In re Britton*, 950 F.2d 602 (9th Cir. 1991), explicitly holds that punitive damages may be excepted from discharge under § 523(a)(6). Florida's brief relies heavily on the BAP case of *In re Ellwanger*, 105 B.R. 551 (9th Cir. BAP 1989), which held that punitive damages assessed for fraud are dischargeable under § 523(a)(2). To support its holding in *Ellwanger*, the BAP broadly construed § 523(a)(7), which excepts from discharge punitive damages owed to a governmental unit, as intended to exclude punitive damages owed to a non-governmental unit anywhere under § 523. This holding has been limited by the Ninth Circuit. *In re Levy*, 951 F.2d 196, 199 (9th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). *Levy* distinguishes between the effect that the various subsections of § 523(a) have on punitive damage awards. While agreeing with *Ellwanger* that punitive damages may be subject to discharge under § 523(a)(2), *Levy* held that punitive damage claims may survive discharge pursuant to § 523(a)(6) when based on willful and malicious injury. The bankruptcy court here has thus correctly determined that the punitive aspects of the Ticor's claims were not subject

to discharge under § 523(a)(6), consistent with *Britton* and *Levy*.

### II.  Ancillary obligations partake of the character of the underlying debt.

█ Florida contends that all damages awarded under the RICO claim, including the discovery sanction and attorney's fees are punitive. Florida's description of these elements as punitive damages somewhat mischaracterizes them. The bankruptcy court found that those portions of the claim based on attorney's fees and costs and the discovery sanction were debts which were ancillary to the underlying debt and partook of its character. This was appropriate. "'Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt.'" *Klingman v. Levinson*, 831 F.2d 1292, 1296 (9th Cir.1987) (quoting *In re Hunter*, 771 F.2d 1126, 1131 (8th Cir. 1985)). It may be that the relationship of ancillary to primary obligations can become so attenuated that it would be unreasonable to characterize them as integral to the original willful and malicious injury. But Florida cannot logically contend that these ancillary debts do not have a direct and apparent genesis in the original claim. These debts are directly consequent to the setting of damages by the courts in the form of final judgments, and the costs of securing performance thereof.

### III.  Consideration of additional facts as to whether Florida's conduct was willful and malicious is precluded.

█ In the case of *In re Scheuer*, 125 B.R. 584 (Bankr.C.D.Cal.1991), the bankruptcy court discharged RICO treble damages assessed under § 523(a)(4) for defalcation. As Florida notes, the *Scheuer* court discharged this portion of the debt pursuant to its equitable power. In opposition to the summary judgment motion, Florida presented the declaration of an attorney who admitted all wrongdoing for the forgery and absolved Florida of knowledge and culpability. Controverting the district court's finding of willful and malicious conduct based on this new evidence, Florida argues that the bankruptcy court erred in awarding judgment

without trial. Florida also attempts to distinguish his circumstances from the case of *In re Adams,* 761 F.2d 1422 (9th Cir.1985), by noting that in *Adams* punitive damages were assessed for injuries caused by a drunk driver, and contrasts his own actions as those of an unwitting accomplice to forgery and therefore less injurious. He contends that had the bankruptcy court considered his evidence, it could have exercised its equitable power to discharge the noncompensatory elements of his debt to Ticor pursuant to *Scheuer.*

All the foregoing does not make its way to a point where a material fact has been controverted. The essential question presented by appellant is whether the bankruptcy court may consider facts or evidence additional to or other than those already presented and resolved in the prior proceeding. Florida's culpability in the forgery was actually litigated and necessarily decided in the prior lawsuit which resulted in a valid final judgment against him. This judgment was affirmed on appeal. In lieu of a Rule 60(b) motion, Florida filed a complaint in district court to vacate that judgment based on the new evidence he presented to the bankruptcy court in opposition to the motion for summary judgment. The complaint was dismissed with prejudice.

A bankruptcy court is precluded from determining the issue of willful and malicious conduct once the issue is settled in prior litigation. *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). New defenses are barred by the judgment. The bankruptcy court is not a last chance forum permitting a judgment debtor to relitigate, *de novo,* issues decided in prior litigation. Florida's proffered evidence cannot be a basis for reconsideration of the two prior judgments simply by virtue of the debtor having filed bankruptcy.

*IV.   The nature of the debt, not the holder of the claim, determines dischargeability under § 523(a)(6).*

■■ Florida contends that the judgment for assault held by appellee Chicago Title must be discharged because Chicago Title, the holder of the claim, was not personally injured in the assault. He offers no authority or legal theory to support this contention. Section 523(a)(6) determines the character of the debt by focusing analysis on the nature of the act from which the debt arises, not the identity of the claimant. The assignee of a claim takes the claim with all rights attendant, and therefore the nondischargeable character of the debt in the hands of the original claimant is transferable. Florida does not assert here, nor did he argue below, that the assault itself was not willful and malicious. Therefore, the court was correct in determining on motion for summary judgment that the assault judgment is a nondischargeable debt.

*V.   The bankruptcy court has jurisdiction to liquidate a claim for attorney's fees intercepted by the automatic stay and can determine the debt nondischargeable on a motion for summary judgment.*

■ The court also excepted from discharge Ticor's claim based on its attorney's fees in the creditor's suit. Florida raised no direct defense to this claim below. The general rule regarding the character of ancillary obligations can be applied to a state court judgment for attorney's fees. In this instance, however, the claim was not reduced to judgment in the creditor's suit because Florida had filed his bankruptcy petition. After awarding judgment against Florida's nephew and sister, the state court judgment states: "Defendant Alvin Florida, Jr. having filed bankruptcy, the Court makes no ruling regarding the motion as to him." On appeal, Florida contends that the bankruptcy court was therefore without jurisdiction to liquidate this claim.

While the state court claim for damages remained pending because of the automatic stay, appellee was not precluded from submitting the claim in Florida's bankruptcy and suing for a judgment of nondischargeability thereon. Appellee did so. Section 523 determines the dischargeability of *debts.* Section 101(12) defines debt as "liability on a claim." Bankruptcy courts routinely determine a debtor's liability on a claim as a necessary prelude to determination of dischargeability under § 523. Thus, appellant's

only contention on appeal, which essentially addresses itself to jurisdiction, is without merit.

The essential question in this instance is whether the court could render summary judgment on the damage claim. The bankruptcy judge noted Ticor's evidence that the other defendants to this claim were "straw men" in Florida's attempt to shelter his property from Ticor's judgment.[3] From this premise one can only conclude that they acted in concert with the debtor for the common purpose of concealing the property and that but for the § 362 stay, judgment would have been entered jointly and severally against all three parties, including appellant, for $124,164.

On motion for summary judgment, once a moving party has presented facts sufficient to satisfy its burden of proof, the nonmoving party must demonstrate that there is a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c); Fed. R.Bankr.P. 7056. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex* at 324, 106 S.Ct. at 2553. Florida did not controvert the facts that Ticor placed before the court. As noted by the bankruptcy court, Florida did not even contest his liability. Under the circumstances, the bankruptcy court was entitled to accept and rule on the facts and inferences derived from these facts as presented by appellee.

## CONCLUSION

Florida's actions were correctly determined to be willful and malicious on the

---

**3.** The memorandum of decision of the bankruptcy court states:

[T]hrough the state court enforcement action, Ticor established that Florida had transferred certain property to Michael and Barbara Blue as "straw men" in an attempt to shelter it from Ticor's judgment. The state court awarded Ticor its attorneys' fees and costs in enforcing the District Court Judgment pursuant to 18 U.S.C. section 1964(c) as well as California statute. The judgment was entered against the

motion for summary judgment. Florida put no material fact at issue, and the bankruptcy court correctly determined that Florida's debts in their entirety constituted nondischargeable debt. AFFIRMED.

Blues. It was not entered against Florida, Florida having commenced this bankruptcy case and obtained the benefit of the automatic stay of 11 U.S.C. § 362 in the meantime. However, at the hearing on this motion, Florida did not contend that those fees and costs were not just as appropriately awarded against him. Consequently, the Court concludes that those fees and costs should also be included in Ticor's nondischargeable judgment.