**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 22-1762**

―――――――――

In re:  LEE ANDREW HILGARTNER,

Debtor.

―――――――――

YASUKO YAGI,

Plaintiff - Appellee,

v.

LEE ANDREW HILGARTNER,

Defendant - Appellant.

―――――――――

**No. 22-1778**

―――――――――

In re:  LEE ANDREW HILGARTNER,

Debtor.

―――――――――

YASUKO YAGI,

Plaintiff - Appellee,

v.

LEE ANDREW HILGARTNER,

Defendant - Appellant.

―――――――――

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Rossie D. Alston, Jr., District Judge.  (1:21-cv-01179-RDA-TCB; 1:21-cv-01123-RDA-TCB)

---

Argued:  October 25, 2023                                        Decided:  January 18, 2024

---

Before HARRIS and QUATTLEBAUM, Circuit Judges, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by published opinion.  Judge Harris wrote the majority opinion, in which Judge Quattlebaum and Judge Bell joined.

---

James A. DeVita, LAW OFFICE OF JAMES A. DEVITA, Arlington, Virginia, for Appellant.  Alfredo Acin, OFFIT KURMAN, P.C., Tysons Corner, Virginia, for Appellee.

---

PAMELA HARRIS, Circuit Judge:

The Bankruptcy Code excepts from discharge debts "for willful and malicious injury" to another.  11 U.S.C. § 523(a)(6).  The question in this case is whether and to what extent money owed under a pre-suit settlement agreement arising from such injury falls within the scope of § 523(a)(6).  We agree with the district court that the debts at issue here are non-dischargeable under § 523(a)(6) and therefore affirm its judgment.

## I.

### A.

To give debtors a "fresh start," the Bankruptcy Code starts from a "presumption of dischargeability."  *In re Strack*, 524 F.3d 493, 496–97 (4th Cir. 2008) (internal quotation marks omitted).  Under that presumption, "'all legal obligations of the debtor, no matter how remote or contingent' are potentially dischargeable in bankruptcy."  *Id.* at 497 (quoting H.R. Rep. No. 95-595, at 309 (1977)).

But there are exceptions to the general rule of dischargeability, set out by Congress in 11 U.S.C. § 523(a).  *Id.*; *see Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018).  This case turns on one such exception, barring the discharge of "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  It is no longer disputed that the debtor here caused "willful and malicious injury" within the meaning of that exception.  Instead, the parties spar over two questions:  whether a settlement agreement entered to preempt litigation over a "willful and malicious injury" creates a non-dischargeable "debt for" that injury; and, if so, whether

3

debts incurred in collecting on the settlement agreement are likewise non-dischargeable under § 523(a)(6).

**B.**

In 2010, Lee Andrew Hilgartner physically assaulted Yasuko Yagi in two separate incidents. After the assaults, the parties entered into two agreements obligating Hilgartner to compensate Yagi for the harm he caused her. The first, not directly at issue here, describes the assaults, with Hilgartner admitting to "grab[bing]" Yagi "by the hair," "hit[ting] her head and shoulders" into a car door, and "grab[bing] both of her arms forcefully, resulting in bruising on her arms and hands." J.A. 131. That agreement required Hilgartner to pay Yagi $80,000 in installments.

Yagi did not release her claims, however, and years later she and Hilgartner entered into the settlement agreement that gives rise to this case. The agreement reiterates Hilgartner's "factual and legal responsibility" for "his infliction of . . . Yagi's injuries." J.A. 70. It then explains that in order "[t]o avoid the time and expense of litigation," *id.*, Hilgartner will pay Yagi $415,000 (the "principal") in installments, as well as fifteen percent interest on untimely payments. The agreement also grants reasonable attorney's fees to the prevailing party in any action commenced to enforce or interpret the settlement.

Though Hilgartner paid a chunk of his obligation – totaling $185,955 over some years – he did not keep up. Instead, he stopped paying, and in 2019, Yagi sued to enforce the settlement agreement. *See Yagi v. Hilgartner*, No. 1:19-cv-01305-RDA-TCB (E.D. Va.). Two days before a scheduled hearing on Yagi's motion for default judgment, Hilgartner filed for bankruptcy, thereby staying Yagi's enforcement action. Yagi filed a

4

proof of claim with the bankruptcy court and objected to Hilgartner's bankruptcy plan on the ground that the debt he owed her was non-dischargeable as a debt for willful and malicious injury.

Yagi then filed the action from which this appeal arises: a complaint to determine the dischargeability of Hilgartner's debt to her. She sought a declaration that the full amount Hilgartner owed her under the settlement agreement – including, as relevant here, not only unpaid principal but also interest on late payments and attorney's fees incurred in enforcing the settlement – was non-dischargeable because the agreement "intended to compensate [her] for the injuries she sustained from [Hilgartner's] intentional and malicious actions." J.A. 68–69.

## C.

In the bankruptcy court, Hilgartner vigorously disputed whether he had inflicted "willful and malicious injury" within the meaning of § 523(a)(6) by assaulting Yagi. The bankruptcy court concluded that he had, crediting Yagi's testimony and Hilgartner's "written acknowledgements of the wrongfulness of his conduct." J.A. 140–41. As a result, it held the unpaid $229,045 of the principal – the $415,000 the agreement demanded less the $185,955 Hilgartner had already paid – non-dischargeable under § 523(a)(6). J.A. 141.

But the bankruptcy court reached a different conclusion regarding other debts due under the settlement agreement, which we refer to together here as "collection debts": the fifteen percent interest accrued on Hilgartner's tardy payments and the attorney's fees Yagi incurred in collecting on the settlement agreement. J.A. 142. In analyzing those amounts, the bankruptcy court recognized that all debts "arising from" willful and malicious injury

5

are covered by § 523(a)(6) and hence non-dischargeable.  J.A. 142 (citing *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998)).  But, the court reasoned, the collection debts – unlike the principal debt – "d[id] not flow directly from the injuries sustained" but instead "came into being years later when the parties signed the Settlement Agreement."  J.A. 143–44.  That separation between injury and liability, it believed, took the collection debts outside the terms of § 523(a)(6) and made them dischargeable.  J.A. 144.

On appeal to the district court, Hilgartner argued that the bankruptcy court erred in finding any part of his debt non-dischargeable.  According to Hilgartner, neither the principal debt nor the collection debt came within the § 523(a)(6) exception, because both arose from a settlement agreement rather than a judgment.  It followed, Hilgartner contended, that his entire debt was "for" a breach of contract – and thus dischargeable in bankruptcy – rather than "for" a willful and malicious injury under § 523(a)(6).

The district court disagreed on both counts, affirming in part and reversing in part the bankruptcy court's decision.  *Hilgartner v. Yagi*, 643 B.R. 107, 127 (E.D. Va. 2022).  The district court first addressed the dischargeability of the outstanding principal amount of $229,045.  Here, it agreed with the bankruptcy court, rejecting Hilgartner's contention that the settlement agreement had "convert[ed]" a non-dischargeable "tort claim" into a dischargeable "contract claim."  *Id.* at 117.  Like the bankruptcy court, the district court concluded that Supreme Court precedent "squarely resolved" this issue in Yagi's favor:  In *Archer v. Warner*, 538 U.S. 314 (2003), "the Court held that . . . money promised in a settlement contract arising out of [a] tort . . . retain[s] the character of the underlying tort" for dischargeability purposes. *Hilgartner*, 643 B.R. at 117.  "[T]he true nature of the debt,"

6

rather than the formal mechanism imposing it, controls. *Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 138 (1979)).  Because the settlement agreement here arose out of a willful and malicious injury, it created a non-dischargeable debt. *Id.* at 119.[1]

But the district court departed from the bankruptcy court as to the collection debts. The district court saw no reason to disaggregate, for purposes of dischargeability under § 523(a)(6), "a settlement award flowing from tortious conduct" and "ancillary costs meant to enforce and collect on" that settlement award. *Id.* at 125.  Both debts "aris[e]" from the same willful and malicious injury, the court reasoned, so both debts are non-dischargeable. *Id.* at 123–26 (quoting *Cohen*, 523 U.S. at 218).

Hilgartner timely appealed.

## II.

On appeal, Hilgartner presses the same arguments as before the district court.  His opening position is that both his principal debt and his collection debt are dischargeable because both are routine debts for breach of contract – the settlement agreement – rather than debts for the underlying willful and malicious injury.  But even if the principal amount owed under the settlement agreement is non-dischargeable, he continues, the bankruptcy

---

[1] Although Hilgartner did not appeal the bankruptcy court's determination that he had inflicted a "willful and malicious injury" for purposes of § 523(a)(6), the district court performed a de novo review of that conclusion and agreed. *Id.*  Hilgartner again declines to challenge that holding before us, so we consider it resolved.

7

court had it right: The collection debt is one step further removed from the original tort and thus falls outside the scope of § 523(a)(6).

"When considering an appeal from a district court acting in its capacity as a bankruptcy appellate court," we conduct "an independent review of the bankruptcy court's decision, reviewing factual findings for clear error and legal conclusions de novo." *SummitBridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 290 (4th Cir. 2019) (quoting *Dep't of Soc. Servs., Div. of Child Support Enf't v. Webb*, 908 F.3d 941, 945 (4th Cir. 2018)). Hilgartner does not appeal any factual determinations as clearly erroneous, nor does he challenge the conclusion that he inflicted willful and malicious injury within the meaning of § 523(a)(6). Instead, this appeal turns primarily on one legal question: whether the Bankruptcy Code permits Hilgartner to discharge his debt to Yagi.[2]

### A.

A "debt" falls within § 523(a)(6)'s exception from discharge if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In this case, the "willful and malicious injury" is now a given; the issue is whether amounts due under the parties' settlement agreement are "debt for" that injury. And on that question, the Supreme Court has provided important guidance, instructing that the introductory phrase "debt for" – which prefaces most of § 523(a)'s exceptions to

---

[2] Hilgartner also challenges the bankruptcy court's calculation of the principal amount due under the settlement and its allowance of interest accrued prior to the filing of his petition. The bankruptcy and district courts both rejected Hilgartner's arguments on these fronts, *see* J.A. 142 n.6, 145; *Hilgartner*, 643 B.R. at 120–21, 126, and we find no error in their holdings.

8

discharge – "connot[es] broadly any liability arising from the specified" conduct. *See Cohen*, 523 U.S. at 220. "'[D]ebt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like" – all count as "debt for." *Id.* Applied here, that makes the "full liability traceable," *id.* at 219, to Hilgartner's infliction of willful and malicious injury non-dischargeable under the terms of § 523(a)(6).

1.

Against that background, we have little difficulty agreeing with the bankruptcy and district courts that the $229,045 outstanding on the settlement agreement principal is non-dischargeable under § 523(a)(6). Indeed, like those courts, we consider the issue squarely resolved by Supreme Court precedent.

In *Archer v. Warner*, 538 U.S. 314 (2003), the Supreme Court rejected an argument nearly identical to Hilgartner's. That case involved a debt under an agreement settling a lawsuit for fraud. And while a debt for money obtained by fraud is excepted from discharge, *see* 11 U.S.C. § 523(a)(2)(A), the debtor argued – like Hilgartner here – that his debt was dischargeable, because it was for breach of the settlement agreement rather than for the underlying fraud. His settlement agreement, in other words, had "replaced" his non-dischargeable debt for fraud with a dischargeable debt for breach of contract. *Archer*, 538 U.S. at 318. The Supreme Court disagreed. The Bankruptcy Code, it explained, required it to "look behind" the settlement "to determine whether it reflected settlement of" an otherwise non-dischargeable claim. *Id.* at 320. If it did, then the settlement debt was also non-dischargeable, even though collection on that debt sounded in contract rather than tort. *Id.* at 320–21.

9

*Archer* understood itself to be "govern[ed]" by *Brown v. Felsen*, 442 U.S. 127 (1979). *Archer*, 538 U.S. at 319. *Brown* involved similar circumstances but featured a consent decree rather than an out-of-court settlement. *Archer*, 538 U.S. at 319–21. That made no difference, the *Archer* Court concluded: "A debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." *Id.* at 321.

As *Brown* governed *Archer*, so *Archer* governs here: Hilgartner's non-dischargeable debt for "willful and malicious injury" may have been reduced to a settlement agreement, but that does not "change[] the nature of the debt for dischargeability purposes." *Id.* at 320.

Hilgartner gestures at two distinctions from *Archer*, but neither makes a difference. First, *Archer*, as noted above, concerned a different subsection of § 523(a), excepting from discharge "any debt . . . for money . . . to the extent obtained by . . . actual fraud." 11 U.S.C. § 523(a)(2)(A). But as the Supreme Court explained in *Cohen*, the phrase "to the extent obtained by" does not speak to whether a particular debt is traceable to or arises from fraud for purposes of dischargeability. 523 U.S. at 218. Instead, that inquiry is governed by the introductory words "debt for," *id.* at 219–20 – precisely the same words that introduce § 523(a)(6)'s "willful and malicious injury" exception, subject to the same broad reading. *See id.* at 220 ("Because each use of 'debt for' in § 523(a) serves the identical function of introducing a category of nondischargeable debt, the presumption that equivalent words have equivalent meaning when repeated in the same statute has particular resonance here." (internal citation omitted)). There is thus no textual

10

basis for limiting *Archer* to the specific subsection under which it was decided. *See In re Detrano*, 326 F.3d 319, 322 (2d Cir. 2003) (explaining that case arising under different § 523(a) exception to discharge is "nonetheless control[led]" by *Archer*).

Second, Hilgartner notes that the settlement agreement in *Archer* resolved an existing lawsuit, while this settlement agreement preempted a lawsuit. *See* J.A. 70 (stating that parties are entering agreement "[t]o avoid the time and expense of litigation"). Again, the statutory question is whether debt embodied in a settlement agreement is "debt for" the underlying tort claim, and whether the agreement comes before or after litigation has no obvious bearing on that point. Indeed, the Supreme Court rejected just this sort of technicality in *Archer*: There was no reason, the Court explained, why it would matter that the debt at issue in *Brown* was reduced to a consent judgment while the debt at issue in *Archer* was embodied in a settlement agreement; both debts arose out of fraud. *Archer*, 538 U.S. at 321. By the same token, here, a debt embodied in a pre-suit settlement that resolves a claim for willful and malicious injury "'arises' no less 'out of' the underlying [tort] than a debt embodied" in a post-suit settlement. *Id.* What matters is the "true nature" of the debt, *id.* (quoting *Brown*, 442 U.S. at 138), not the form of the legal instrument in which it is reflected.[3]

---

[3] While courts rarely note any distinction between pre- and post-suit settlements in this context, it appears that they generally apply *Archer* to debts arising from both. *See, e.g.*, *In re Hathaway*, 364 B.R. 220, 241–43 (Bankr. E.D. Va. 2007) (applying *Archer* to pre-suit settlement).

Cases may arise where the absence of an underlying lawsuit makes it more difficult, as a practical matter, for the creditor to demonstrate that a debt embodied in an agreement is "for" willful or malicious injury or some other non-dischargeable claim. *See In re Muhs*, 923 F.3d 377, 384 (4th Cir. 2019) (creditor bears burden of proving non-dischargeability by preponderance of the evidence). This is not such a case. The settlement agreement itself answers any questions on that front: The debt is "for the pain, damage, and suffering" Hilgartner caused Yagi in "altercation[s]" on two dates in 2010. J.A. 70. Because – as all now agree – those altercations inflicted "willful and malicious injury," Hilgartner cannot discharge the debts arising therefrom.

2.

We turn now to the issue that divided the bankruptcy court and district court: the dischargeability of what we are calling the "collection debts." These are liabilities arising from the terms of the settlement agreement and triggered by Yagi's efforts to collect on that agreement: interest on late payments and attorney's fees incurred in enforcing the agreement and contesting Hilgartner's bankruptcy proceedings. We conclude that, like the principal, these debts "aris[e] from" willful and malicious injury, *Cohen*, 523 U.S. at 223, and are therefore likewise non-dischargeable.

An initial clarification: The attorney's fees incurred in *executing* the settlement agreement – as opposed to collecting on it – are not in controversy. Those fees are not dischargeable for two reasons. Most straightforwardly, the settlement agreement explicitly absorbed the fees into the principal, J.A. 70–71, which, as explained above, is not dischargeable. And in any event, *Cohen* establishes that attorney's fees incurred in the

12

creation of a non-dischargeable debt are also non-dischargeable, as part of the "full liability traceable" to the underlying injury. *Cohen*, 523 U.S. at 219.

What is disputed here are the attorney's fees incurred in *collecting* on the settlement agreement and contesting Hilgartner's bankruptcy proceedings. The bankruptcy court, as noted above, held these debts dischargeable because, in its view, they arose not "directly" from the assaults but rather "came into being years later when the parties signed the Settlement Agreement." J.A. 143–44. And the same was true, it held, with respect to the interest that accumulated when Hilgartner paid his installments late.

Like the district court, we disagree. And like the district court, we think the Supreme Court's decision in *Cohen* points toward the opposite result. In *Cohen*, the Court held that treble damages from "actual fraud" – and attorney's fees incurred in litigating the fraud – are non-dischargeable under § 523(a)(2)(A)'s exception for "debt for" money obtained through such fraud. *See* 523 U.S. at 215; 11 U.S.C. § 523(a)(2)(A). That case establishes two propositions important to this case.

First, *Cohen* forecloses any argument that only the portion of Hilgartner's debt commensurate with the "willful and malicious injury" he inflicted – the "restitutionary" portion – is non-dischargeable as "debt for" that injury. 523 U.S. at 219 (rejecting debtor's effort to "impose[] a restitutionary ceiling on the extent to which [his] liability for fraud is nondischargeable"). Instead, *Cohen* holds that § 523(a)'s exceptions may reach punitive and other related ancillary debts. "Once it is established that specific money" is "for" fraud, willful and malicious injury, or other conduct excepted under § 523(a), then "'any debt'

13

arising" from the injury – not only the part of the debt that makes the victim whole – is non-dischargeable.  523 U.S. at 218.

Second, *Cohen* reaches this result through a "broad" reading of the relevant statutory text:  the introductory phrase "debt for."  *See In re Pleasants*, 219 F.3d 372, 375 (4th Cir. 2000).  Those words, *Cohen* instructs, should not be read narrowly or in a purely "restitutionary sense"; instead, they "connot[e] broadly *any* liability arising from the specified object" – fraud, willful and malicious injury, or the like.  523 U.S. at 220 (emphasis added).  As we explained at the outset, the Supreme Court spoke here in decidedly expansive terms, equating "debt for" with "'debt as a result of,' 'debt with respect to,' debt by reason of,' and the like."  *Id.*  Any debt "arising from" or incurred "on account of" an excepted ground qualifies as "debt for" that ground under § 523(a).  *See id.*

The collection debts here fit that description.  Like the principal owed under the settlement agreement, these debts, too, were incurred "as a result of" or "on account of" Hilgartner's assaults on Yagi.  But for the assaults, there would have been no settlement agreement and no collection debt.  And, critically, the entire settlement "arose from" the same willful and malicious injuries.  As the district court explained, both the attorney's fees and the late-payment interest are mechanisms – for which the parties bargained – to enforce and collect on the non-dischargeable principal.  *Hilgartner*, 643 B.R. at 125.  In effect, Yagi agreed to release her claim for willful and malicious injury if Hilgartner paid

14

the principal *and* the costs of collecting it; the principal and the collection debts are "inextricably linked." *Id.*

The bankruptcy court reasoned that the collection debts "are not fairly traceable to the injuries" because they result only from "the Settlement Agreement" rather than "flow[ing] directly from the injuries sustained." J.A. 144. But that is the same logic rejected by *Archer* when it held that a debt for money promised in a settlement agreement could *also* be a "debt for" an underlying fraud and thus non-dischargeable under § 523(a). *See* 538 U.S. at 319. As *Archer* makes clear, a settlement agreement does not disrupt the causal chain. Hilgartner's collection debts, which "flow directly from [the] agreement for the express purpose of enforcing its terms," *Hilgartner*, 643 B.R. at 125, remain "traceable to," *Cohen*, 523 U.S. at 219, the injury he inflicted on Yagi. The settlement simply formalized a bargain – a bargain that envisioned compensation for injury and collection alike – to resolve claims arising from willful and malicious injury. Under *Archer* and *Cohen*, that is enough to make Hilgartner's collection debts, like his principal debt, non-dischargeable under § 523(a)(6).[4]

Our conclusion aligns with the weight of authority, which, like the district court here, treats any contrast between "fees spent to execute a settlement agreement" and "fees

---

[4] As the district court recognized, *Cohen* of course does not create any independent right to attorney's fees for collection on a non-dischargeable debt. *Hilgartner*, 643 B.R. at 124. Section 523(a) governs the dischargeability of debts, not their existence, and there must be an independent legal basis for any collection debts. *See*, *e.g.*, *Matter of Sheridan*, 105 F.3d 1164, 1166 (7th Cir. 1997). Here, there is no dispute that the settlement agreement created the debts.

15

spent to enforce that same agreement" as a "distinction without a difference." *Hilgartner*, 643 B.R. at 125.  For example, the Eighth Circuit adopted this approach – even pre-*Cohen* – in a case with facts mirroring ours, where a contract granted "reasonable attorney's fees" to the party "prevailing in any matter arising under the contract documents." *In re Alport*, 144 F.3d 1163, 1168 (8th Cir. 1998).  In those circumstances, the court held, attorney's fees incurred in enforcing the contract "were properly included in the nondischargeable debt . . . because attorney's fees provided by contract, like accrued interest, can become part of the debt." *Id.* (citing *In re Hunter*, 771 F.2d 1126, 1131 (8th Cir. 1985)).  Likewise, the Seventh Circuit explained that because "[a]ttorneys' fees, no less than the principal and interest, are the result of" the conduct excepting a debt from discharge, all those amounts are non-dischargeable as "part of" the non-dischargeable debt. *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 677 (7th Cir. 1995).  In our view, these cases – and others like them[5] – best

---

[5] *See TranSouth Fin. Corp. of Fla. v. Johnson*, 931 F.2d 1505, 1505–06 (11th Cir. 1991) (reasoning that "[o]nce a debt has been determined nondischargeable," a creditor's contractually guaranteed attorney's fees incurred in "collect[ing]" that debt "are included as part of the nondischargeable debt"); *In re Loder*, 796 F. App'x 698, 701 (11th Cir. 2020) (reiterating *TranSouth*'s holding); *In re Florida*, 164 B.R. 636, 639 (B.A.P. 9th Cir. 1994) ("costs of securing" payment of a debt for willful and malicious injury are non-dischargeable because they "have a direct and apparent genesis in the original claim"); *In re Steward*, No. 16-00479, 2017 WL 4842366, at *3 (Bankr. D.D.C. Oct. 18, 2017) ("damages relating to collection of the nondischargeable debt" also non-dischargeable); *In re French*, 563 B.R. 212, 223–24 (Bankr. W.D. Ky. 2016) (per *Cohen*, the "debt associated with" the fraudulently obtained money "includes post judgment interest as well as Plaintiff's costs, expenses, and fees, including reasonable attorney's fees, incurred as the result of the enforcement of the agreement or collection of the indebtedness"); *In re Wine*, 558 B.R. 438, 445–46 (Bankr. D. Colo. 2016) (*Cohen* "quite definitively dictates that collection fees . . . arising from money fraudulently obtained are nondischargeable"); *In re Hathaway*, 364 B.R. at 248–50 (contractually awarded attorney's fees "incurred in collecting the note" non-dischargeable under *Cohen*); *In re Moen*, 238 B.R. 785, 795–96

align with the text of § 523(a) and the Supreme Court's decisions in *Archer* and *Cohen*, and we follow their approach today.[6]

**B.**

We turn finally and more briefly to a separate evidentiary challenge raised by Hilgartner. At trial, the bankruptcy court permitted Yagi to introduce a chart listing the due date of each installment payment owed under the settlement agreement, whether and in what amount Hilgartner had paid, and the cumulative totals owed. Hilgartner argues that the introduction of this chart violated Federal Rule of Evidence 1006, which permits the use of such a chart only if the documents on which it is based are made available to the other parties. *See* Fed. R. Evid. 1006; *United States v. Janati*, 374 F.3d 263, 272–73 (4th Cir. 2004). We review this evidentiary dispute for abuse of discretion, *Janati*, 374 F.3d at 275, and for two reasons, we find no reversible error here.

First, Hilgartner likely forfeited this objection by failing to raise it at trial before the bankruptcy court. *See Padilla v. Troxell*, 850 F.3d 168, 177–78 (4th Cir. 2017). Hilgartner objected repeatedly to other aspects of the chart, including whether Yagi had personal knowledge of its contents. But "[a]n evidentiary objection on one basis is insufficient to

---

(B.A.P. 8th Cir. 1999) (explaining that *Cohen* confirms the holding of *In re Alport*, 144 F.3d 1163 (8th Cir. 1998)).

[6] While *Cohen*'s language is broad, it is not unlimited. As the Ninth Circuit's Bankruptcy Appellate Panel cautioned, "It may be that the relationship of ancillary to primary obligations can become so attenuated that it would be unreasonable to characterize them as integral to the original willful and malicious injury." *In re Florida*, 164 B.R. at 639. But we need not define those outer limits today because, whatever they are, the collection debts at issue here fall on the non-dischargeable side of the line.

17

preserve an evidentiary objection on a different basis," *id.* at 178, and Hilgartner never objected on the ground that Yagi had failed to provide him the original documents on which her chart was based.[7]

And regardless, we are convinced that any error here was harmless. *See United States v. Wilkinson*, 137 F.3d 214, 229 (4th Cir. 1998) (finding harmless an assumed Rule 1006 error in failing to offer original documentation for chart). The figures in Yagi's chart reflected only information to which Hilgartner had complete and ready access: the amounts that left his own bank account as payments toward the principal under the settlement agreement, and due dates and interest amounts that came straight from the settlement agreement itself. *See Hilgartner*, 643 B.R. at 127. If Hilgartner wished to "test the accuracy of the chart's summarization," in other words, he already had all the tools to do so, *see Janati*, 374 F.3d at 273 (describing "obvious import" of Rule 1006's disclosure requirement) – and yet he produced no evidence to challenge any of the chart's calculations. In these circumstances, any disclosure error under Rule 1006 was harmless.

## III.

For the reasons given above, the district court's judgment is affirmed.

*AFFIRMED*

---

[7] For the sake of clarity, we note that the bankruptcy court did sustain a Rule 1006 objection to a different exhibit. But neither that exhibit nor that objection bears on the question before us.

18